January Term, 1862.

Sexton et al.
v.
Mann et al.

---

### Sexton and others vs. Mann and others.

While an application under the statute for the "relief of insolvent debtors" is *pending*, one creditor cannot be allowed to gain an advantage over the others by supplementary proceedings against the debtor to reach choses in action, or other assets, embraced in the schedule annexed to his petition.

A circuit court in which such application is pending, may restrain the prosecution of such supplementary proceedings in a county court.

APPEAL from the Circuit Court for *Milwaukee* County. On the 22d of April, 1861, *Mc Vickar* filed in said circuit court his petition to be discharged from his debts, under the statute for the "relief of insolvent debtors." On the 7th of

January Term, 1862.

SEXTON et al.
v.
MANN et al.

May following, while said application was pending and while the notice required by the statute was being published, *Herman, Henry* and *Joseph Mann*, who had recovered a judgment against *Mc Vickar* in the county court of said county on the 6th of April (on which execution was returned unsatisfied), made affidavit that the debtor had certain choses in action which he unjustly refused to apply to the satisfaction of said judgment, and the county judge made an order requiring *Mc Vickar* to appear before him on the 9th of May to make discovery, &c. The choses in action mentioned in the affidavit were described in the schedule of assets annexed to *Mc Vickar's* petition, and *Herman, Henry* and *Joseph Mann* were mentioned therein as among his creditors. They were citizens of this state when his petition was filed, and their cause of action accrued here. The present action was brought in the circuit court by *Sexton and others* (who were creditors of *Mc Vickar*), on behalf of themselves and all others his creditors, to restrain the prosecution of said supplementary proceedings during the pendency of the insolvent proceedings, so that all the assets of *Mc Vickar* might be retained under the control of the circuit court, for distribution *pro rata* among all the creditors. A temporary injunction was granted on the application of the plaintiffs, and the defendants appealed.

*Austin &-Pereles,* for appellants:

1. The circuit court had no jurisdiction in this action to restrain the proceedings of the county court, the latter being a court of competent jurisdiction in law and equity, and having full power to stay proceedings on its own judgment, upon a proper application. *Grant vs. Quick,* 5 Sandf. (S.C.), 612; *Bennett vs. Le Roy,* 5 Abb., 55 and 156; id., 408; *Conover vs. Mayor &c.,* 25 Barb., 529. 2. When the complaint does not show that the plaintiff is entitled to any final relief, a preliminary injunction should not be granted. 5 Abb., 182; 5 How., 460; 1 Whittaker's Pr., 252, and cases cited. When it appears from the complaint that the rights and interests of both parties are equal, it is abuse of discretion to grant an injunction. 19 Barb., 371; 16 How., 253; 1 Till. & Shearm. Pr., 253, 674; 1 Whittaker's Pr., 253. When the probabilities

are against the plaintiff's success on the trial, an injunction should not be granted (11 Abb., 35); nor where the plaintiff's rights are doubtful. 3 Bosw., 311; 1 Hopk., 347; 6 How., 152. 3. On the facts stated in this complaint the plaintiffs are not entitled to any final relief; because they have no present interest in the property which they seek to restrain the defendant from taking, and whether they will ever have an interest depends upon a contingency. If the insolvent should obtain his discharge, his assignee would acquire the title to the property; but until the execution of the assignment, the title to the property remains in the insolvent. Burrill on Assignments, 321; 24 Wend., 280; 2 Kent's Comm., 399, 494; *Berthelon vs. Betts*, 4 Hill, 577; *Bailey vs. Burton*, 8 Wend., 339. The doctrine maintained in England under the bankrupt act, that the title of the assignee relates back to the first act of bankruptcy, or to the fiat was not implied from the nature of things, but was an express provision of the act. *Cooper vs. Chitty*, 1 Smith's L. C., 569; 4 Met., 346; 2 Black. Comm., chap. 31. And this doctrine was confined to cases *in invitum*. 2 Parsons on Con., 653. Under the insolvent law of this state, the court has no control over the property of the insolvent petitioner to compel him to assign it—nor have the creditors the power of preventing a discontinuance of the proceedings, and a disposal of the property by the creditor. R. S., chap. 161.

*Jenkins & Hickox*, for respondents:

It is universally held in England that the statutory transfer of property under bankrupt and insolvent proceedings, operates *retrospectively* upon all the property to which the bankrupt was entitled at the time of filing the petition. 2 Wendell's Black., note to pp. 285–6; id., 485, 488; 1 Harrison's Dig., title "Bankrupt," Subd. 5, "Proceedings by Assignees," pp. 1045–47. "When the assignment is executed, the title of the assignee is completed *by relation* from the date of the act of bankruptcy, although the property is not transferred out of the bankrupt before the assignment." *Balme vs. Hutton*, 9 Bing., 471 (23 E. C. L., 338.) The same doctrine of relation obtains under the bankrupt law of the United States. The only conflict upon the subject was up-

on the question, whether an attachment upon the goods of a bankrupt was avoided by a decree in bankruptcy under a petition filed *subsequently* to the levy of the attachment. Judge STORY held that the attachment in such a case would be avoided. 2 Story's R., 131, 376; 3 id., 428, 447; 5 Law Rep., 362; 6 id., 313. He was sustained in this position by Judge BETTS of New York, 1 N. Y. Leg. Obs., 53, 326. The supreme court of New Hampshire held a contrary opinion. 7 Law Rep., 77, 312; 3 N. Y. Leg. Rep., 367; 1 N. Y. Leg. Obs., 115. Neither court, however, even intimated that an attachment levied or lien acquired subsequently to the filing of the petition, would override the effect of the insolvent proceedings. See also *Locke vs. Winning*, 3 Mass., 334. The decision in *Bailey vs. Burton*, 8 Wend., 339, did not turn upon this question, and all that is said upon the subject is merely *obiter*. It is no objection to this doctrine of relation, that the proceedings are voluntary on the part of the debtor. The applications for a discharge under the U. S. Bankrupt Law of 1841, were almost exclusively voluntary (2 Parsons on Con., 588); and the doctrine of relation was applied to that law by all the decisions, as to liens acquired subsequently to the filing of the petition. 1 N. Y. Leg. Obs., 53, 115, 326; 5 Law Rep., 24, 56. Neither is the objection tenable, that the doctrine should not apply, because the insolvent may discontinue at any time, and so perpetrate a fraud on the creditors. (1) We deny that the insolvent can, without the consent of the creditors, by discontinuing his proceedings, retain from the creditors the property specified in the petition. The process of transfer is one of sequestration, *the law* taking the property from the insolvent and placing it in the hands of the assignee as trustee. 2 Parsons on Con., 632; id., 604, note e; 1 N. Y. Leg. Obs., 81–83, 199; 16 Ves., 486; 8 id., 533; 19 id., 204; 2 Ves. Jr., 40; 7 id., 608; 4 Madd., 273. (2) This court will not presume a fraud. None is alleged in this case, and the beneficent provisions of the act should not be defeated by mere presumptions. When the question of fraud arises, the court can deal with it. The insolvent and his proceedings and property are within the jurisdiction and subject to the con-

trol of the court. At all events, while the proceedings are pending in good faith, the court should not permit the property to be dissipated. The insolvent has made a virtual appropriation of it for the benefit of all his creditors. Being under the control of the court, it should be kept intact until the final determination of his application.

May 15.  *By the Court*, COLE, J. It appears to us that the question whether the circuit court was authorized to enjoin the proceedings on the judgment in the county court, depends much for its proper solution upon the still further inquiry, whether it is the object of our statute for the relief of insolvent debtors, to distribute all the effects of the insolvent ratably among his creditors. For if the statute contemplates that the property of the debtor shall be distributed among the creditors *pro rata*, then clearly, since the application by the insolvent for his discharge was pending when the proceeding in the county court was instituted, it was the duty of the circuit court to interfere and prevent the appellants from obtaining satisfaction of their judgment out of assets the title to which would by relation vest in the assignee, and which should be ratably distributed. It is a mistake to suppose the application for a stay of proceedings upon the judgment should have been made in the county instead of the circuit court. The insolvent proceeding was pending in the circuit court, and undoubtedly that court might interpose by way of injunction, and prevent one creditor from obtaining a preference or priority of payment out of the insolvent's estate to the injury of the others.

Now in regard to the law itself, we are of the opinion that its object and intent were to dedicate all the insolvent's estate to the common benefit of the creditors, upon the principle that equality is equity. This being the policy of the law, it would manifestly be unjust to permit one creditor, by superior diligence, to gain an advantage over others through the aid of supplemental proceedings. For suppose the appellants are not enjoined, they might, by such proceedings, exhaust the entire estate of the insolvent in satisfying their judgment. It is not pretended that they have acquired any

special lien upon any portion of the debtor's property; but
they have resorted to the supplemental proceedings in the
county court to reach assets which the insolvent embraced in
his schedule, on presenting his petition for discharge to the
circuit court. The property embraced in this schedule the
law devotes to the payment of all the creditors ratably. It
seems to us necessary to give the statute this construction in
order to render it of any practical benefit to the creditors.
Otherwise, while the insolvent proceeding is pending, one
creditor may obtain his judgment, and by taking the steps
resorted to in the county court in this case, exhaust all the
property of the debtor before the order of assignment is
made. The appellants can claim the protection of no supe-
rior equities in respect to the insolvent's estate. They stand
upon an equality with the other creditors. They must be
content to come in under the assignment for their proportion
of the assets.

It is insisted that this construction ought not to be given
the insolvent law, because the court has no control over the
property of the insolvent debtor to compel an assignment;
nor have the creditors the power of compelling a continu-
ance of the insolvent proceedings.

It is a sufficient answer to this objection to say, that the
court may properly restrain one creditor from obtaining any
preference or priority of payment out of the assets, until it
is ascertained whether the insolvent prosecutes his applica-
tion for a discharge or not. If a discharge is granted and an
assignment made, then all of the property belonging to the
debtor at the time of the presentation of his petition, is
equally distributed among the creditors. If no discharge is
granted, then the court would undoubtedly permit the cred-
itors to resort to the ordinary remedies without restraint.
But after the insolvent proceeding is instituted, and while it
remains undetermined, one creditor ought not, by superior
diligence, to obtain the entire control of the debtor's estate,
or apply it, if need be, to the payment of his own debt to the
exclusion of all others.

We therefore think the order of the circuit court, enjoining the appellants from prosecuting their proceedings supplemental to an execution, in the county court, should be affirmed.